# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRI KING, | CASE NO. 1:10-cv-02413-AWI-SKO |
|           Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE DENIED** |
|    v. | |
| NATIONAL CREDIT WORKS, INC. and GREGORY G. EMMINGER, | |
|           Defendants. | (Docket No. 17) |
| _____/ | |

## I.   INTRODUCTION

On December 29, 2010, Plaintiff filed a complaint against Defendant National Credit Works, Inc. ("National"). (Doc. 1.)  The complaint alleged that National violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*. ("RFDCPA").

On March 28, 2011, Plaintiff filed an amended complaint, adding Defendant Gregory G. Emminger ("Emminger")[1] and again asserted claims under the FDCPA and the RFDCPA.  (Doc. 8.)  On June 3, 2011, Plaintiff filed executed summonses showing that both National and Emminger had been served on April 21, 2011, and were thus required to respond to the First Amended Complaint

---

[1] National and Emminger will be collectively referred to as "Defendants."

("FAC") on or before May 12, 2011. (Docs. 12, 13.)  Neither Defendant, however, responded to the FAC.

On June 3, 2011, Plaintiff requested that the Clerk of Court enter the default of National and Emminger (Doc. 14), and the default of both Defendants was entered on June 6, 2011.  (Doc. 15.)

On July 14, 2011, Plaintiff filed a motion for default judgment, requesting that judgment be entered against National and Emminger for violations of the FDCPA and the RFDCPA.  For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be DENIED without prejudice to refiling the motion.

## II.   BACKGROUND

Plaintiff asserts that Defendants began calling her in August 2010 in an attempt to collect an "alleged outstanding debt" that Plaintiff asserts was her sister's debt. (Doc. 8, ¶¶ 9-10.)  Although Plaintiff requested that Defendants stop calling her, explaining that her sister could not be reached at Plaintiff's number, Defendants stated that they would continue to call Plaintiff until her sister called Defendants back. (Doc. 8, ¶ 11.)  Although Plaintiff requested to speak to a supervisor and asked for the name of the person to whom she was speaking, both requests were denied by Defendants. (Doc. 8 ¶ 11.)  Defendants repeatedly contacted Plaintiff in connection with the alleged debt of Plaintiff's sister. (Doc. 8, ¶ 12.)  On September 28, 2010, Plaintiff sent a letter to Defendants informing them that they were attempting to collect a debt that was not hers and requested that Defendants "cease and desist all calls to her." (Doc. 8, ¶ 13.)  Although a certified mail return receipt indicated that Defendants received Plaintiff's cease-and-desist letter on September 30, 2010, Defendants continued to call Plaintiff in relation to the debt on October 12, 14, 19, and 22, 2010. (Doc. 8, ¶ 14.)

On November 2, 2010, Plaintiff retained counsel who sent a letter to Defendants demanding that they cease and desist all direct contact with Plaintiff. (Doc. 8, ¶ 15.)  On November 10, 2010, Defendants acknowledged that Plaintiff had retained counsel, but they continued to contact Plaintiff directly in an attempt to collect the debt on November 17 and 18, 2010.  (Doc. 8, ¶¶ 16-17.)  Defendants sent a letter dated December 13, 2010, to Plaintiff's counsel alleging that they were attempting to collect a debt from Plaintiff for a credit card, but could not provide complete

verification of the credit card, and Plaintiff has no knowledge of that credit card account.  (Doc. 8, ¶ 18.)

### III.   DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).  It is within the sole discretion of the court as to whether default judgment should be entered.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment.  *See id.*  Instead, the Ninth Circuit has determined that a court should consider seven discretionary factors, often referred to as the "Eitel factors," before rendering a decision on default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The *Eitel* factors include the following: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See id.*

A plaintiff is required to prove all damages sought in the complaint.  *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992).  In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint.  Fed. R. Civ. P. 54(c).  If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default.  *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.  *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.      Application of the *Eitel* Factors**

**1.      Possibility of Prejudice to Plaintiff is Low**

Typically, this factor weighs in favor of default judgment because, if default judgment is not entered against a defendant who has refused to participate in the litigation, the plaintiff may be effectively denied a remedy until such time as the defendant participates and makes an appearance in the litigation – which may never occur.  Denying a plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor.  *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

Here, for the reasons set forth below, the allegations of the FAC are insufficient to state claims under the FDCPA and the RFDCPA. The deficiencies of the complaint are curable, however, and the Court recommends that Plaintiff be permitted to amend the FAC pursuant to Federal Rule of Civil Procedure 15(b).  In this way, denying default judgment is not prejudicial to Plaintiff because she remains free to cure the deficiencies and renew the motion for default judgment if Defendants still refuse to respond to the lawsuit.  Thus, this factor does not weigh in favor of granting default judgment because there is no risk that Plaintiff will be without a remedy if default judgment is not granted at this stage.

**2.      Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include consideration of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint.  In evaluating the adequacy of the complaint, courts determine whether it is sufficient to state a claim that supports the relief sought.  *See Danning v. Lavine* , 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotations omitted).

**a.      Count I:  FDCPA Claim**

To plead an FDCPA claim, a plaintiff must allege facts that establish the following: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (citing *Buckley v. Bayrock Mortg. Corp.,* No. 1:09-cv-1387-TWT, 2010 WL 476673, at *6 (N.D. Ga. Feb. 5, 2010) (Thrash, J. Adopting Vineyard, M.J.); *Beadle v. Haughey*, No. 04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005); *Russey v. Rankin*, 911 F. Supp. 1449, 1453 (D.N.M. 1995)); *see also McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1278 (M.D. Fla. 2008).

#### i.   Debt Collection Activity Arising from Consumer Debt

The first element has two basic requirements: (1) there must be collection activity and (2) this activity must relate to a consumer debt.  *See Buckley*, 2010 WL 476673, at *6.  While the "FDCPA does not expressly define 'collection activity,' courts construe the definition broadly to effect the purpose of the statute.  *See Sanz v. Fernandez*, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009).   For example, the United States Supreme Court has held that the FDCPA "applies to attorneys who 'regularly' engage in debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *see also Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1146 (9th Cir. 1998).

Plaintiff asserts that Defendants contacted her in an attempt to collect an alleged outstanding debt of Plaintiff's sister.  (Doc. 8, ¶¶ 9-10.)  A phone call to collect a debt is collection activity, and thus this requirement of the element is sufficiently alleged.

As to the second requirement, a debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is] primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).  Here, while Plaintiff asserts that Defendants contacted her regarding a debt of Plaintiff's sister, there is no information regarding the nature of that debt and whether it was primarily for personal, family, or household purposes.  There is an allegation that Defendants contacted Plaintiff's counsel by letter and asserted that they were attempting to collect a credit-card debt from Plaintiff (Doc. 8, ¶ 18), but it is not clear that this is the debt that Defendants were attempting to collect in earlier alleged phone calls to Plaintiff.  As there is little alleged with regard to the type of debt Defendants were attempting to collect, the Court cannot determine whether it was the type that is covered under the FDCPA.  Accordingly, the allegations are insufficient in this regard.

1

## ii. Debt Collector

2      "To state a claim for violation of the FDCPA, a plaintiff must allege that the defendant is a

3  'debt collector' collecting a 'debt.'" *Izenberg v. ETS Servs., LLC,* 589 F. Supp. 2d 1193, 1199 (C.D.

4  Cal. 2008) (quoting *Ines v. Countrywide Home Loans*, No. 08-cv-1267 WQH (NLS), 2008 WL

5  4791863, *2 (S.D. Cal. Nov. 3, 2008)). A "debt collector" under the FDCPA is either (1) "a person"

6  the "principal purpose" of whose business is the collection of debts (whether on behalf of himself

7  or others); or (2) "a person" who "regularly" collects debts on behalf of others (whether or not it is

8  the principal purpose of his business). 15 U.S.C. § 1692a(6); *See Martinez v. Quality Loan Serv.*

9  *Corp.*, No. CV 08-07767, 2009 WL 586725, at *3 (C.D. Cal. Feb. 10, 2009).

10

## (a) Defendant National Credit Works, Inc.

11      The allegations in the complaint are very conclusory: "National Credit Works, Inc. and

12  Gregory G. Emminger ('Defendants') are 'debt collectors' as defined by 15 U.S.C. § 1692a(6)." (Doc.

13  8, ¶8.) In *Martinez*, the court determined a similar allegation was too conclusory and vague to

14  sufficiently state a claim under the FDCPA. *Martinez*, 2009 WL 586725, at * 3. The court reasoned

15  that this allegation was a legal conclusion with no supporting factual allegations. *Id.* The court

16  concluded that, because the plaintiff was asserting that the defendant acted as a debt collector in

17  foreclosing on Plaintiff's house, which is not a type of debt collection that comes under the auspices

18  of the FDCPA, the lack of supporting factual allegations did not indicate *how* the defendant was a

19  debt collector under the FDCPA.

20      Here, the allegation that National is a "debt collector" pursuant to the FDCPA is only a legal

21  conclusion that is not factually supported. Plaintiff does not allege that National's principal business

22  purpose is the collection of debts or that it "regularly" collects debts on behalf of others.[2] Plaintiff

23  does allege that National "is an entity who at all relevant times was engaged, by use of the mails and

24  telephone, in the business of attempting to collect a 'debt' from Plaintiff, as defined by 15 U.S.C.

25

26      [2] The Court notes that Plaintiff's counsel has represented other plaintiffs in suits against National Credit Works,
Inc. in this district that relate to asserted violations of the FDCPA. In one such case, *Goodman v. National Credit Works,*

27  *Inc.*, No. 2:11-cv-01103-GEB-EFB, the plaintiff alleged that National "regularly attempts to collect debts alleged to be
due another," in contrast to the bare allegations in the complaint in this action. (*See* No. 2:11-cv-01103, Doc. 1, ¶4.)

28

§ 1692a(5).  However, this allegation falls short of stating that National's principal business purpose is debt collection or that it "regularly" collects debts on behalf of others.   With so little information regarding the *nature* of the debt, the conclusory allegation that National is a "debt collector" under the statute is more problematic, as the court explained in *Martinez*, 2009 WL 586725, at * 3.  There are debt collectors that courts have treated as exempt from the FDCPA, such as mortgage servicers.  *See, e.g., Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009).  Allegations related to both the type of debt and the frequency of the collection by the debt collector are necessary to plead that an entity or a person is a "debt collector" under the FDCPA.  15 U.S.C. § 1692a(5) ("debt collector" is a person whose business' primary purpose is the collection of debt or a person who "regularly" engages in debt collection activity).

### (b)      Defendant Gregory G. Emminger

With regard to Emminger, Plaintiff asserts that Emminger "is an individual who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a 'debt' from Plaintiff as defined by 15 U.S.C. § 1692a(5)." (Doc. 8, ¶ 5.)  Plaintiff then asserts that "[e]mployees can be held personally liable under the FDCPA." (Doc. 8, ¶ 6.)  Although Plaintiff does not assert what Emminger's relationship is to National, Plaintiff filed a status report on March 28, 2011, indicating that Plaintiff "add[ed] Defendant's CEO in an attempt to get a response" to the lawsuit. (Doc. 9, 2:4-5.)[3]  However, allegations regarding Emminger's relationship to National are completely lacking in the FAC.  As a result, there are insufficient facts pled to support a claim against Emminger under the FDCPA in his individual capacity.

To establish that an individual defendant is personally liable, a plaintiff must first establish that the individual is a "debt collector" under the statute.  As the district court in *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1073 (E.D. Cal. 2008) explained, "because the FDCPA imposes personal, not derivative, liability, serving as a shareholder, officer, or director of a debt collecting

---

[3] The Court notes that in *Goodman v. National Credit Works, Inc.*, No. 2:11-cv-01103-GEB-EFB, the plaintiff, represented by the same counsel, in a suit against National and Emminger for violations of the FDCPA, provided much more detailed allegations regarding Defendant Emminger.  (*See* No. 2:11-cv-01103, Doc. 1, ¶5.)

corporation is not, in itself, sufficient to hold an individual liable as a 'debt collector.'"  Section 1692a(6) requires that, to be considered a debt collector, the individual must have "regularly collect[ed] or attempt[ed] to collect, directly or indirectly, debts owed or due another.  15 U.S.C. § 1692a(6).  Pursuant to this requirement, courts have found an individual personally liable where the individual (1) materially participated in collecting the debt at issue (*see, e.g., del Campo v. Kennedy*, 491 F. Supp. 2d 891, 903 (N.D. Cal. 2006)); (2) "exercise[d] control over the affairs of [the] business" by signing debt collection letters and had involvement in the day to day operations (*Piper v. Portnoff Law Associs.*, 274 F. Supp. 2d 681, 689-90 (E.D. Pa. 2003)); or (3) was "personally involved in the collection of the debt at issue" (*Musso v. Seiders*, 194 F.R.D. 43, 49 (D. Conn. 1999)).

"It is not enough, however, to merely allege that [the individual] is a debt collector because he regularly attempts to collect debts, either directly or indirectly, in [a] capacity as a "top executive . . . . " *Musso*, 194 F.R.D. at 47.  Here, Plaintiff has not alleged how Emminger was involved with National, whether he participated personally in the collection of the debt at issue, or whether he ratified or approved the collection procedures used by National, even presuming he was associated with National.  Plaintiff alleges only a conclusory statement that Emminger was involved in the business of attempting to collect a debt from Plaintiff.  This provides insufficient facts by which Emminger could be found individually liable under the FDCPA as a debt collector, particularly because there are no allegations that Emminger was associated with National.  This element is not sufficiently pled.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 495 U.S. 519, 526 (1983) (weighing sufficiency of allegations in 12(b)(6) context, the court must not "assume that the [plaintiff] can prove facts that it has not alleged").

### iii.    Acts Prohibited under the FDCPA

This element is sufficiently pled. Plaintiff alleges, among other FDCPA violations, that Defendants have used unfair and unconscionable means to collect the alleged debt under Section 1692f by telling Plaintiff that they would not stop calling her until her sister called them.  (Doc. 8, ¶ 19(a).)  Plaintiff also alleges that Defendants were not authorized by the agreement creating the

1   debt to collect payment from Plaintiff in violation of Section 1692f(1); communicated with Plaintiff

2   at times which were known or should have been known to be inconvenient for Plaintiff in violation

3   of Section 1692c(a)(1); engaged in conduct the natural consequence of which is to harass, oppress,

4   or abuse Plaintiff in violation of Section 1692d; and caused Plaintiff's telephone to ring repeatedly

5   or continuously with the intent to harass, annoy or abuse in violation of Section 1692d(5).  These

6   allegations are sufficient to allege particular acts of Defendants that are prohibited under the FDCPA.

7        **iv.**  **Conclusion**

8      The complaint contains no factual allegations that indicate how National is a "debt collector"

9   under the statute.  Further, the type of debt that Defendants are alleged to have been attempting to

10  collect is ambiguously pled such that the Court cannot conclude that it is "debt" within the meaning

11  of the FDCPA.  Finally, with regard to Emminger, there are no allegations regarding who he is or

12  the nature of his relationship with National.

13       **b.**  **Count II: RFDCPA**

14     Pursuant to the California Rosenthal Fair Debt Collection Practices Act, the term "consumer

15  debt" means "money, property, or their equivalent, due or owing or alleged to be due or owing from

16  a natural person by reason of a consumer transaction. *Id*. at § 1788.2(f).  The term "consumer credit

17  transaction" means a transaction between a natural person and another person in which property,

18  services or money is acquired on credit by that natural person from such other person for personal,

19  family, or household purposes." *Id*. at § 1788.2(e).  Under the RFDCPA – like the FDCPA –  the

20  debt that is the subject of the collection efforts must be debt that relates to personal, family, or

21  household purposes.

22     Also similar to the FDCPA, the RFDCPA applies only to debt collectors.  The definition of

23  "debt collector" found in the state statute is broader than that contained in the FDCPA. *Martinez*,

24  2009 WL 586725, at *4.  The RFDCPA defines a "debt collector" as "any person who, in the

25  ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt

26  collection," defined as "any act or practice in connection with the collection of consumer debts."

27  Cal. Civ. Code § 1788.2(b), (c).

28

The inadequacies with regard to the RFDCPA claim are the same as those explained above with regard to the FDCPA claim.  It is not clear that the debt that Defendants were attempting to collect related to a "consumer credit transaction" as defined under Cal. Civ. Code § 1788.2(e).  Further, while the definition of "debt collector" is arguably broader under the RFDCPA than the FDCPA, there are no allegations that National or Emminger "regularly" engage in debt collection activity.

With regard to whether Defendants are "debt collectors," the FAC alleges only that National and Emminger "are 'debt collectors' as defined by 15 U.S.C. § 1692a(6).  This is a legal conclusion that is not entitled to the presumption of truth.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation.").  Additionally, while the FAC states that National and Emminger were engaged by the use of the mails and telephone "in the business of attempting to collect a 'debt' from Plaintiff, as defined by 15 U.S.C. § 1692a(5)," this is not an allegation that National and Emminger regularly engage in this type of debt collection activity.  *See   Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Accordingly the allegations with regard to the RFDCPA are insufficient.

### 3.      The Sum of Money at Stake in the Action

The fourth *Eitel* factor, the sum of money at stake, does not necessarily weigh in favor of default judgment.  Although the amount is relatively small, the allegations of the complaint are insufficient; thus, it is difficult to ascertain and conclude that the amount of money involved is reasonable in light of Defendants' actions.  Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions.  *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).  Given the insufficiencies of the factual allegations in the FAC, this factor weighs against default judgment.

### 4.      Dispute Concerning Material Facts

Because the FAC as to Defendants is insufficient to state a cause of action against them, none of the facts may be taken as true.  *See Cripps,* 980 F.2d at 1267 (if facts are legally insufficient to

state a claim, they will not be established as true for purposes of default judgment).  Accordingly, there is a likelihood that genuine issues of material fact exist.  *See Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (where the complaint is well-pleaded, the facts are taken as true upon entry of default and there is no likelihood that any genuine issue of material fact exists).  As the FAC is insufficiently pled, and not taken as true, it is more likely that there are disputes concerning the material facts.  Thus, the Court finds that this weighs against awarding default judgment.

### 5.    Default Due to Excusable Neglect

There is no evidence that Defendants' failure to participate in the litigation is due to excusable neglect.  Thus, this factor weighs in favor of granting default judgment.

### 6.    Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case.  Where a complaint is legally insufficient, as it is here, the policy favoring decisions on the merits protects against a judgment where one may not be warranted.  Due to the insufficiencies of the allegations in the FAC, it would be unjust to award default judgment without a full consideration of the merits of Plaintiff's claims.  This factor decidedly tilts against granting Plaintiff's motion for default judgment.

## IV.    CONCLUSIONS AND RECOMMENDATIONS

On balance, the *Eitel* factors weigh against an award of default judgment, and the Court recommends that default judgment not be entered at this time.  The allegations of the FAC are insufficient to sustain a cause of action under the FDCPA and the RFDCPA and cannot be taken as true.  The deficiencies of the FAC, however, are remediable, and amendment is not futile.

Accordingly, the Court RECOMMENDS as follows:

1.    That Plaintiff's motion for default judgment be DENIED;

2.    That Plaintiff be permitted to amend the FAC pursuant to Federal Rule of Civil Procedure 15(b); and

3.    That Plaintiff be permitted to refile her motion for default judgment once the deficiencies of the FAC are addressed, should Defendants' failure to respond to the

lawsuit continue.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.   Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.   Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    August 30, 2011**                              **/s/ Sheila K. Oberto**
                                                      UNITED STATES MAGISTRATE JUDGE

12